# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.             **Case No. 06-CR-336**

**SEAN KRUSCHKE**
   **Defendant.**

## SENTENCING MEMORANDUM

   Defendant Sean Kruschke pleaded guilty to using a telephone to facilitate a felony drug offense, 21 U.S.C. § 843(b), and I set the case for sentencing. In imposing sentence, I must first calculate the advisory sentencing guideline range, then determine the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

   The parties agreed to a drug weight of 100-200 grams of cocaine, which produced a base offense level of 18 under U.S.S.G. § 2D1.1(c)(11). Based on his timely guilty plea, the parties further agreed that defendant qualified for a 3 level reduction for acceptance of responsibility under § 3E1.1, for a final offense level of 15. Coupled with defendant's criminal history category of VI,[1] level 15 produces an imprisonment range of 41-51 months.

   Based on his post-offense rehabilitation and a one year revocation sentence he served related to the instant offense conduct, defendant requested a sentence of probation. The government argued that probation would depreciate the seriousness of the offense and

---

[1] Defendant disputed the scoring of certain offenses but conceded that he fell in category VI regardless.

requested a prison sentence. I agreed that some prison was necessary in this case, but that a term below the range would suffice. The reasons follow.

**I.**

In imposing sentence, the district court must consider:

(1) the nature and circumstances of the offense, and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court must, after considering these factors, impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. The guidelines carry no more weight than the other § 3553(a) factors in making this determination. See United States v. Carter, 530 F.3d 565, 578 (7th Cir.), cert. denied, 129 S. Ct. 474 (2008). Thus, while

2

Case 2:06-cr-00336-LA   Filed 02/27/09   Page 2 of 6   Document 669

the district court must give respectful consideration to the guidelines in determining a sufficient sentence, it may not presume that the guideline sentence is correct, Gall v. United States, 128 S. Ct. 586, 596-97 (2007); rather, it must consider the parties' arguments and determine an appropriate sentence "without any thumb on the scale favoring a guideline sentence," United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). The court is free to impose a sentence above or below the guideline range so long as it adequately sets forth reasons, consistent with the § 3553(a) factors, for finding the sentence appropriate for the particular defendant. United States v. McKinney, 543 F.3d 911, 913-14 (7th Cir. 2008) (citing United States v. Castro-Juarez, 425 F.3d 430, 436 (7th Cir. 2005)).

**II.**

Defendant was apprehended pursuant to the government's investigation of a large-scale cocaine distribution organization in the Waukesha, Wisconsin area, headed by a man named Javier Aguilera. The government obtained a wiretap for Aguilera's phone, pursuant to which agents intercepted about forty-nine drug-related calls between defendant and Aguilera. The calls revealed that defendant purchased cocaine from Aguilera, typically in 1/8 to 1 ounce quantities, primarily (although not exclusively) for personal use.[2] The specific count of conviction arose out of a call on August 1, 2006, in which defendant and Aguilera discussed a purchase of 4 ½ ounces. The parties agreed that defendant should be held responsible for 100-200 grams of cocaine.

The offense conduct was not all that serious; defendant was primarily a user; he engaged in little distribution to others. However, his record was another matter. At age thirty-

---

[2]Defendant conceded that he provided or attempted to provide cocaine to two others.

3

two, he had compiled a long list of convictions: a juvenile adjudication for burglary, attempted theft in 1994, theft in 1995, burglary in 1996, operating motor vehicle without owner's consent in 1997, theft by fraud in 1997, battery in 1997, disorderly conduct in 2003, and conveying encumbered property in 2003. He was on probation for the final offense when he committed the instant crime, which resulted in revocation of his probation and a one year state prison sentence.

Despite this record, defendant did seem to be doing better lately. His girlfriend of eleven years (and the mother of his two children, ages ten and one) stated that he had changed since his release from prison, remaining drug free and participating in family affairs. She further stated that the time he spent in custody on the revocation sentence opened his eyes, as he missed the birth of their son.

Defendant had a long history of substance abuse, dating back to his teen years and including abuse of alcohol and cocaine. However, he had been clean for over two years by the time of sentencing; all screens on pre-trial release were negative. Defendant's counselor indicated that his prognosis was good and that he was working hard to ensure that he did not return to his previous lifestyle. He also appeared to be doing well employment-wise, working as a painter for about the past year. His employer appeared at sentencing and indicated that he was an excellent employee.

When this case originally came on for sentencing, I had some concerns about the enduring nature of defendant's changes, and I adjourned the case for several months to see how he did. The results were mixed. Although he continued to work and maintain sobriety, he did have some problems with his state probation agent. In a report prepared shortly before sentencing, she indicated that defendant had been stopped for operating after suspension of

4

his driver's license, and that he failed to timely report police contact.  The state report also contained allegations that he operated a business contrary to his state rules, and that he had not otherwise been totally up front with the agent.  The state actually took him into custody for about one week based on these allegations, but then released him after deciding not to proceed with revocation.[3]

Given these mixed results, I agreed with the government that some confinement was needed in this case.  The guidelines recommended 41-51 months in prison, but that was more than necessary.

First, I found the range greater than necessary to provide just punishment given defendant's specific conduct.  His involvement was primarily as a purchaser and user; he was not a dealer of any significance in his own right.  The specific count of conviction was for use of a telephone, not conspiracy or possession with intent to deliver.  I also considered the fact that he had served about one year in prison already on revocation of his probation.  That revocation was based primarily on the instant offense conduct, and the Seventh Circuit has acknowledged that when the conduct underlying the revocation and the instant offense is the same, a concurrent sentence would be reasonable.  See United States v. Huusko, 275 F.3d 600, 603 (7th Cir. 2001).  I could not impose a concurrent sentence because the state term had discharged, but I could consider that sentence as, in part, satisfying the need for punishment here.  See, e.g., United Sates v. Valadez, No. 07-CR-245, 2008 WL 4066092, at *3 (E.D. Wis. Aug. 27, 2008).

---

[3]To his credit, defendant did make some efforts to pay the restitution he owed in the state case, although some of the reduction stemmed from a tax write-off taken by the victim. He also made efforts to pay the costs imposed in connection with the birth of his child.

5

Second, I found the guideline range somewhat greater than necessary to protect the public and deter future offenses. Defendant's record was significant, as discussed, but he did appear to be doing better lately – remaining drug free, focusing on his family and working steadily. I was not totally convinced that he had turned the corner, based on some of the problems noted by the state probation agent, but I found that if he could defeat his drug addiction he presented a reduced threat of re-offending.

Under all of the circumstances, I found a total period of confinement of 10 months sufficient but not greater than necessary to satisfy the purposes of sentencing. I elected to split that term into 5 months prison and 5 months of home confinement. Despite the mitigating circumstances, some period of imprisonment was necessary given the seriousness of the offense, the extent of defendant's record and his uneven performance during the continuance.

**III.**

Therefore, I committed defendant to the custody of the Bureau of Prisons for 5 months, followed by 1 year supervised release with conditions of 5 months home confinement and drug testing and treatment.[4] This sentence varied from the guidelines, but because it was supported by the particular facts discussed herein it created no unwarranted disparity. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 27th day of February, 2009.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[4] I noted that the sentence would be the same regardless of my findings on the guidelines.